UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARLOTTE MARIE DOUGLAS,           )
                                   )
            Plaintiff,             )
                                   )
     v.                            )     Case No. 4:12CV814 FRB
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,[1] )
                                   )
            Defendant.             )

## MEMORANDUM AND ORDER

     This cause is before the Court on plaintiff's appeal of
an adverse determination by the Social Security Administration.
All matters are pending before the undersigned United States
Magistrate Judge, with consent of the parties, pursuant to 28
U.S.C. § 636(c).

## I.  Procedural History

     On December 1, 2006, plaintiff Charlotte Marie Douglas
filed an application for Disability Insurance Benefits pursuant to
Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.; and
an application for Supplemental Security Income pursuant to Title
XVI of the Act, 42 U.S.C. §§ 1381, et seq., in which she claimed
she became disabled on February 11, 2006.  (Tr. 214-21, 222-24.)

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting
Commissioner of Social Security.  Pursuant to Fed. R. Civ. P.
25(d), Carolyn W. Colvin is therefore automatically substituted
for former Commissioner Michael J. Astrue as defendant in this
cause of action.

Upon initial consideration, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 92, 93, 116-20, 121-27.) On February 17, 2009, after an administrative hearing, an Administrative Law Judge (ALJ) issued a partially favorable decision, finding plaintiff to be disabled as of August 20, 2007, but not prior to that date. (Tr. 94-107.)

On April 12, 2010, upon plaintiff's request for review of the ALJ's decision, the Appeals Council entered an Order remanding the case to the ALJ instructing the ALJ to clearly articulate the frequency of stooping allowed and to provide rationale for the conclusion; to give consideration to the opinion of Dr. Terry Weis and to explain the weight given to the opinion; to give further consideration to plaintiff's maximum residual functional capacity (RFC); and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. (Tr. 112-13.)

Upon remand, an additional administrative hearing was held before an ALJ on August 26, 2010, at which plaintiff and medical and vocational experts testified. (Tr. 23-41.) On October 15, 2010, the ALJ issued a decision finding that, between February 11, 2006, and August 20, 2007, plaintiff could have performed jobs as they existed in significant numbers in the national economy and thus was not under a disability during that period. (Tr. 11-18.) On April 2, 2012, the Appeals Council denied plaintiff's request

for review of the ALJ's decision. (Tr. 1-5.) The ALJ's October 2010 decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

Plaintiff now seeks judicial review of the Commissioner's final decision arguing that it is not based upon substantial evidence on the record as a whole. Specifically, plaintiff claims that the ALJ failed to properly consider the opinion evidence of plaintiff's treating physician, Dr. Poetz, resulting in an RFC determination unsupported by some medical evidence; and improperly relied upon vocational expert testimony to find plaintiff not disabled inasmuch as the testimony was based upon a flawed hypothetical question. Plaintiff requests that the Commissioner's decision be reversed and that she be awarded benefits, or that the matter be remanded for further proceedings.

Because the ALJ committed no legal error and substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's determination that plaintiff was not disabled prior to August 20, 2007, should be affirmed.

## II.  Relevant Testimonial Evidence Before the ALJ

A.   <u>Hearing Held January 13, 2009</u>

At the hearing on January 13, 2009, plaintiff  testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was fifty-one years of age.  Plaintiff stood five feet, four inches tall and weighed

240 pounds. Plaintiff was right-handed. Plaintiff was married but lived without her husband in her daughter's house with her daughter and three minor grandchildren. Plaintiff had a seventh grade education and testified that she received no other education. Plaintiff testified that she currently received food stamps. (Tr. 47-51.)

Plaintiff's Work History Report shows that plaintiff worked as a hotel housekeeper from 1990 to 1993. From 1997 to 2001, plaintiff worked as a laborer for temporary services. For six months in 1999, plaintiff worked as an assembler for a drapery manufacturer. From January to August 2001, plaintiff worked as an engraver at a medical supply company. From December 2003 to January 2004, plaintiff worked as a hospital housekeeper. (Tr. 258.)

Plaintiff testified that she last worked in 2004 babysitting one or two of her grandchildren and that her health was deteriorating at that time. Plaintiff testified that she had difficulty standing and sitting at that time and also experienced shortness of breath. (Tr. 55-57.) Plaintiff testified that she was unable to work currently because of breathing difficulties and because of residual effects from a stroke she had in February 2006. Plaintiff testified that she was paralyzed when she first had the stroke and continued to have weakness on her right side. Plaintiff testified that her right side felt heavy, that she could not lift

her right arm, that she could not lift or hold anything with her right arm, and that she walked with a cane using her left hand because she could not hold the cane with her right hand. Plaintiff testified that her right leg used to drag, but that she could now lift it a little better although she continued to walk with a limp. (Tr. 67-70.) Plaintiff testified that the stroke also affected her memory and her speech but that her speech had since improved. Plaintiff testified that her long term memory remained impaired. (Tr. 69, 71-72.)

Plaintiff testified that she also suffered from a broken right ankle for which she underwent surgery for placement of plates, bolts and screws. Plaintiff testified that she was able to work after having her ankle surgically repaired. (Tr. 70.)

Plaintiff testified that she had high blood pressure for which she took medication. Plaintiff testified that she did not believe her condition to be controlled. (Tr. 70.)

Plaintiff testified that she also had diabetes which was controlled with medication. (Tr. 71.)

Plaintiff testified that she had hepatitis C but never received treatment for the condition. (Tr. 75.)

Plaintiff testified that she fell in the early 1990's and injured her back and continued to have problems with arthritis in her back. Plaintiff testified that she was in constant pain. (Tr. 53.)

Plaintiff testified that she was involved in a car accident in the early 1990's in which her legs were trapped in the car door when the car struck a tree. Plaintiff testified that she could not walk for a long period of time and was currently scheduled for bilateral knee replacement. (Tr. 73-74.)

Plaintiff testified that she had blurred vision but could read some words when wearing eyeglasses. Plaintiff testified that she no longer had the physical ability to write because of her right-sided weakness and could not write with her left hand. Plaintiff testified that she could make change at a grocery store. (Tr. 49-50.)

Plaintiff testified that she takes hydrocodone and ibuprofen for pain but that she continues to feel the pain. Plaintiff testified that her medication makes her sleepy. Plaintiff testified that she only experiences side effects from her other medications if she does not eat. (Tr. 76-77.)

As to her exertional abilities, plaintiff testified that she had difficulty standing up and difficulty walking on account of her back pain and arthritis. Plaintiff testified that she also gets out of breath when walking. Plaintiff testified that she mostly sits so she does not have to move around too much and breathe too hard. (Tr. 76.)

As to her daily activities, plaintiff testified that all she does during the day is sit and gets up only to go to the

bathroom or to get something to drink. Plaintiff testified that her grandchildren feed her in the morning before they go to school and that she does not eat anything until they come home. Plaintiff testified that she does no housework. Plaintiff testified that her grandchildren help to take care of her by bringing her food and her medications and by helping her get dressed. Plaintiff testified that she does not have a driver's license. (Tr. 52, 78-79.)

B.  Hearing Held August 26, 2010

1.  *Plaintiff's Testimony*

At the hearing held August 26, 2010, plaintiff testified in response to questions posed by counsel.

Plaintiff testified that she suffered a stroke and heart attack in February 2006 and experienced paralysis at the time. Plaintiff testified that she gradually became stronger but continued to experience weakness. Plaintiff testified that she has not been able to work since February 2006 because of shortness of breath, an inability to stand due to pain and arthritis in her back, and pain in her knees. (Tr. 27-28.)

Plaintiff testified that she weighed around 200 pounds when she had the heart attack in 2006 and that she has gained weight since then because of her inability to get around. (Tr. 29.)

2.  *Testimony of Medical Expert*

Dr. Morris Alex, a medical expert, testified at the

hearing in response to questions posed by the ALJ and counsel.

Dr. Alex testified that, for the period between February 2006 and August 2007, the medical record showed plaintiff to suffer from chronic obstructive pulmonary disease (COPD), cerebral vascular accident (CVA), and upper and lower extremity weakness but that such conditions did not meet or equal a listed impairment. Dr. Alex also testified that the record showed evidence of left knee pain during the relevant period, but not of listing level severity. Dr. Alex testified that there was evidence of a myocardial infarct which happened prior to the relevant period, but that there was no evidence in the record demonstrating that plaintiff had any limitations on account thereof. (Tr. 31-33.)

Dr. Alex testified that, based on the medical record, plaintiff would be limited to sedentary work during the relevant period. Dr. Alex testified that plaintiff would be unable to engage in repetitive stooping or bending, but could occasionally engage in such activity. Dr. Alex also testified that plaintiff's COPD, coupled with her smoking during the relevant period, would limit her from being in areas with excessive heat and cold, high humidity, and noxious fumes. Dr. Alex testified that there appeared to be no evidentiary basis to support Dr. Poetz's opinion that plaintiff would be absent from work three times each month, but testified that the remaining conclusions reached by Dr. Poetz were reasonable based on the record. (Tr. 33-35.)

- 8 -

3.   *Testimony of Vocational Expert*

Delores Gonzales, a vocational expert, testified at the hearing in response to questions posed by the ALJ and counsel.

Ms. Gonzales characterized plaintiff's past work as a hospital housekeeper as medium and unskilled; as a hotel housekeeper as light and unskilled; as a punch press operator as medium and semi-skilled; as an engraver as sedentary and semi-skilled; and as a drapery assembler as light and semi-skilled. (Tr. 38.)

The ALJ asked Ms. Gonzales to assume a person of plaintiff's education, training, and work experience at the time of the alleged onset of disability and to further assume the person to be limited to light work with a sit/stand option and the ability to change positions frequently.  The ALJ asked Ms. Gonzales to further assume the person to be able to occasionally climb stairs and ramps but to never be able to climb ropes, ladders, or scaffolds.  The ALJ asked Ms. Gonzales to further assume that the person could occasionally stoop, kneel, and crouch but could never crawl. Finally, the ALJ asked Ms. Gonzales to further assume that the person must avoid concentrated exposures to extreme cold, extreme heat, wetness, fumes, odors, dust, and gas.  Ms. Gonzales testified that such a person could not perform any of plaintiff's past relevant work but that she could perform other work as an order caller, of which 35,230 such jobs existed in the St. Louis area and

2,906,600 nationally; and a ticket taker, of which 1,620 such jobs existed in the St. Louis area and 106,570 nationally. (Tr. 39.)

The ALJ then asked Ms. Gonzales to consider the same individual from the first hypothetical but that such person was limited to sedentary work. Ms. Gonzales testified that such a person could perform work as an information clerk, of which 9,990 such jobs existed in the St. Louis area and 1,112,350 nationally; and order clerk, of which 2,540 existed in the St. Louis area and 264,520 nationally. (Tr. 40.)

Finally, the ALJ asked Ms. Gonzales to consider the same individual from the second hypothetical but that such person would need two breaks in addition to her lunch break and other permitted breaks because of fatigue. Ms. Gonzales testified that there would be no jobs available for such a person. (Tr. 40.)

In response to questions posed by counsel, Ms. Gonzales testified that a person who could not stay on task for two hours could not perform the jobs as previously described. Ms. Gonzales also testified that missing three days a month would be more than most employers would tolerate. (Tr. 40-41.)

### III. Relevant Medical Evidence Before the ALJ

While incarcerated on March 20, 2005, plaintiff complained to Corrections Medicine that she experienced sharp chest pain at a level ten on a scale of one to ten. Plaintiff was transported to St. Joseph's Hospital. It was noted that plaintiff

had a myocardial infarction five years prior. Plaintiff was prescribed Clonidine. (Tr. 300-02.)

Plaintiff was admitted to the emergency room at St. Mary's Health Center on February 12, 2006, with complaints of weakness in her right arm and leg. Plaintiff denied any dysphasia or facial droop. Plaintiff left the hospital less than two hours later against medical advice. (Tr. 306-07.)

Plaintiff was admitted to the emergency department at Christian Hospital Northeast on February 17, 2006, with complaints of dizziness, nausea, vomiting, lightheadedness, and muscle weakness. Plaintiff reported having chest pain earlier in the day. Plaintiff appeared to be in no apparent distress. Plaintiff reported having had a stroke and that she had been released from the hospital the previous day. Plaintiff's medications were noted to include Norvasc, aspirin, and Motrin. Plaintiff reported smoking two packs of cigarettes a day. Physical examination and diagnostic testing yielded essentially normal results. A CT scan of the brain showed small old left parietal infarct. Plaintiff was discharged that same date in satisfactory condition. Plaintiff was prescribed Antivert for dizziness. (Tr. 319-39.)

Plaintiff visited Dr. Robert P. Poetz on February 27, 2006, for follow up of stroke. Plaintiff also complained of having a cough for over a month. It was noted that plaintiff had a history of hypertension and myocardial infarction two to three

years prior and was seeking disability and food stamps. Plaintiff also currently complained of blurred vision. Plaintiff was noted to smoke. Examination showed plaintiff to walk with a shuffling gait and to have decreased strength on the right side of her body with both upper and lower extremities. No active motion was detected. Passive motion was intact. Plaintiff was diagnosed with CVA, right hemiparesis, and bronchitis. Laboratory testing was ordered and Nicoderm patches were prescribed. Plaintiff was provided a cane and an off-work pass. Pulmonary function testing performed that same date showed moderately severe restriction and very mild obstruction, but with nineteen percent improvement with a bronchodilator. (Tr. 346, 347.)

Plaintiff returned to Dr. Poetz on April 3, 2006, and complained of having vertigo for one and a half months. Plaintiff admitted to not receiving treatment for the condition. Plaintiff also complained of weakness associated with heavy menses and stress incontinence symptoms since her stroke. Dr. Poetz noted plaintiff to have weakness in her right upper extremity. Plaintiff was unable to shrug with her right shoulder and plaintiff's left patellar deep tendon reflex was noted to be absent. Dr. Poetz also noted plaintiff to have weakness in her right lower extremity. Plaintiff was diagnosed with, *inter alia*, atherosclerosis, diabetes mellitus II, and acute bronchitis. Actoplus Met, Zocor, Diovan, and Amoxicillin were prescribed. (Tr. 345.)

Plaintiff visited Dr. Poetz on October 17, 2006, with complaints of shortness of breath. Plaintiff reported the condition to have worsened three weeks prior and that she had no energy. Plaintiff reported that she awakens two times a night because of shortness of breath. Plaintiff also complained of pain in her right knee. Plaintiff reported having had the pain since her stroke in February 2006, but that the pain had worsened. Plaintiff also complained of pain on the right side of her chest. Plaintiff reported that she does not check her blood sugar level and that she stopped taking her medications. Dr. Poetz diagnosed plaintiff with uncontrolled diabetes mellitus and bronchitis, non-compliant. Plaintiff was prescribed Augmentin and Mucinex and was instructed to return in two weeks. (Tr. 343.)

Plaintiff visited Dr. Poetz on February 2, 2007, with complaints of left knee pain, heaviness in the chest, and numbness in the right arm. It was noted that plaintiff had run out of medications three weeks prior. Plaintiff was diagnosed with chest pain, COPD, urinary tract infection, and generalized anxiety disorder (GAD) with anxiety and depression. Advair, Cipro, and Lexapro were prescribed and diagnostic testing was ordered. (Tr. 390.) Pulmonary function testing performed that same date showed improvement over testing previously performed in February 2006. Current results showed moderate restriction but with eleven percent improvement with a bronchodilator. (Tr. 347, 391.)

Plaintiff returned to Dr. Poetz on February 5, 2007, and complained of shortness of breath. Plaintiff requested medication to help relieve the condition. It was noted that plaintiff had not been taking her medication for GAD. Physical examination showed wheezing as well as pain in the left CVA. Plaintiff was diagnosed with COPD, anxiety, and urinary tract infection. Plaintiff was prescribed Celexa and was instructed to stop smoking. (Tr. 393.)

Plaintiff returned to Dr. Poetz on February 8, 2007, and complained of recent onset of left flank pain. Darvocet was prescribed. (Tr. 395.)

On May 15, 2007, plaintiff reported to Dr. Poetz's office that she continued to have left knee pain and that her left flank pain was worsening. Plaintiff also reported constant shortness of breath, tightness in her chest, cough, and incontinence with cough. It was noted that plaintiff used a cane to walk. It was also noted that plaintiff was not taking her Advair. Wheezing and shortness of breath was noted upon examination. Plaintiff had full range of motion about the knees. Plaintiff was diagnosed with COPD, hemiparesis, diabetes mellitus II, hyperlipidemia, and depression. It was noted that plaintiff was not compliant with her medication regimen. Plaintiff was instructed to restart Advair and to return in three months for follow up. (Tr. 396.)

Plaintiff returned to Dr. Poetz's office on September 25, 2007, for follow up. Plaintiff reported continued pain in her left

knee, and it was noted that the knee was markedly swollen. Plaintiff also complained of right knee pain. Plaintiff reported that oxycodone helped. Plaintiff requested that she be provided a note that she needed to rest her knees. Plaintiff also reported constant coughing and continued shortness of breath, exacerbated with movement. Plaintiff also reported having tightness in the center of her chest. Plaintiff reported being incontinent, especially with coughing. Plaintiff requested that she be prescribed Valium instead of Lexapro. Physical examination showed wheezing on expiration of all lung fields. Crepitus was noted on both knees with pain upon palpation of the left knee. Plaintiff was prescribed Serevent, Celexa, Quartuss, Actoplus Met, Zantac, Diovan, and Motrin. An MRI of the left knee was ordered. (Tr. 397.)

An MRI taken of the left knee on October 3, 2007, showed a tear of the medial meniscus and osteoarthritis, chondromalacia of the patella. (Tr. 398.)

Plaintiff visited Northland MidAmerica Orthopedics (Northland) on October 22, 2007, with complaints of having pain in her left knee since October 2006. Tenderness was noted about the left knee, and plaintiff had limited range of motion. Plaintiff was noted to have an abnormal gait, and McMurray's test was positive. Plaintiff was diagnosed with degenerative joint disease of the left knee. (Tr. 362-64.)

Plaintiff cancelled a scheduled appointment with Northland on December 5, 2007. (Tr. 364.)

On December 5, 2007, Dr. Poetz's office noted that plaintiff was unable to undergo knee surgery because of elevated blood pressure. Plaintiff was instructed to increase her dosage of Diovan. (Tr. 399.)

On January 8, 2008, Dr. Poetz diagnosed plaintiff with uncontrolled hypertension. Medication was prescribed. (Tr. 400.)

Plaintiff reported to Dr. Poetz's office on January 15, 2008, that she continued to have shortness of breath and urinary incontinence. Examination showed crackles in both lungs and pain in the left lower abdominal quadrant. Plaintiff was diagnosed with pneumonia/bronchitis and was prescribed Cipro. (Tr. 401.) A chest x-ray taken that same date was normal. (Tr. 402.)

On January 15, 2008, Dr. Terry J. Weis noted that x-rays taken of the left knee in response to plaintiff's complaints of progressive pain, decreased range of motion, giving way, and deformity showed marked degenerative arthritis. A total knee replacement was considered. (Tr. 366-67.)

On March 7, 2008, Dr. Poetz prescribed Lexapro and Xanax for plaintiff's anxiety and depression. (Tr. 404.)

On March 26, 2008, Dr. Poetz noted that plaintiff was unable to undergo knee surgery because of elevated blood pressure. (Tr. 405.)

On April 16, 2008, Dr. Weis noted that plaintiff had been scheduled to undergo left total knee replacement on November 19, 2007, and March 19 and 26, 2008, but had to reschedule due to her blood pressure. (Tr. 368.) Plaintiff continued to complain of pain in her knee. Plaintiff was given a patellar tracking brace. (Tr. 414.)

Plaintiff was admitted to Depaul Health Center on April 29, 2008, with complaints of intermittent chest pain, dysuria, low blood pressure, and recent onset of generalized weakness. It was noted that plaintiff had shortness of breath associated with COPD and coughing associated with smoking. Plaintiff was discharged on May 1, 2008, and was diagnosed with chest pain, likely musculoskeletal; pulmonary nodules; urinary tract infection; mild renal failure, resolved; dehydration; and COPD. (Tr. 373-80.

Surgery scheduled May 5, 2008, for left knee replacement was cancelled due to plaintiff's elevated blood pressure. (Tr. 382-83.)

An x-ray of the lumbar spine taken August 16, 2008, in response to plaintiff's complaints of hip pain showed mild degenerative joint disease. (Tr. 385.) Strength in plaintiff's legs was noted to be intact. Straight leg raising was negative. It was questioned whether plaintiff's pain was related to an acute sepsis condition. (Tr. 387-88.)

On September 9, 2008, plaintiff complained to Dr. Poetz

of having numbness in her thigh during the previous one and a half months. Plaintiff was counseled regarding an increase in her symptoms due to noncompliance. Plaintiff was prescribed Xanax. (Tr. 408.)

Plaintiff complained to Dr. Weis on November 12, 2008, that she had severe pain in her left knee. It was noted that plaintiff had difficulty bearing full weight. Moderate effusion and swelling was noted as well as decreased range of motion. Plaintiff was given Vicodin. (Tr. 414.)

On December 8, 2008, Dr. Weis noted plaintiff to continue to suffer from hypertension and marked degenerative arthritis in her right knee. It was noted that plaintiff could not sleep at night and suffered a marked disability. Knee replacement surgery was scheduled. (Tr. 413.)

On January 6, 2009, Dr. Weis completed a Medical Opinion Regarding Ability To Do Work-Related Activities in which he opined that, because of her severe degenerative joint disease of the left knee, plaintiff had the ability to frequently lift less than ten pounds, could stand and walk less than two hours in an eight-hour workday, and sit less than two hours in an eight-hour workday. Dr. Weis opined that, if plaintiff must periodically change positions, she could sit for ninety minutes before changing positions, stand for five minutes before changing positions, and would need to walk every five minutes for five minutes at a time. Dr. Weis opined

that plaintiff would need to be able to shift positions at will.
Dr. Weis opined that plaintiff could occasionally twist but could
never stoop, bend, crouch, or climb stairs or ladders. Dr. Weis
opined that plaintiff's functioning with her upper extremities was
unaffected by her impairment. Dr. Weis also opined that plaintiff
had no environmental restrictions. Finally, Dr. Weis opined that
plaintiff's impairment and/or related treatment would cause
plaintiff to be absent from work more than three times a month.
(Tr. 416-19.)

On January 8, 2009, Dr. Poetz completed a Pulmonary RFC
Questionnaire in which he reported that plaintiff's diagnosed
conditions included diabetes mellitus-type II, hypertension, COPD,
increased lipids, anxiety and depression, status post CVA, colon
mass, GAD, and left medial meniscus tear. Dr. Poetz reported that
plaintiff exhibited symptoms of shortness of breath, rhonchi, chest
tightness, episodic acute bronchitis, fatigue, and coughing. Dr.
Poetz reported that emotional factors contributed to the severity
of plaintiff's symptoms and functional limitations. Dr. Poetz
opined that pain or other symptoms would frequently interfere with
plaintiff's attention and concentration needed to perform simple
work tasks. Dr. Poetz opined that plaintiff was capable of
handling low stress jobs, reporting that plaintiff had multiple
physical complaints and depression which indicated difficulty with
increased stress. It was noted that plaintiff's medications

included Actoplus Met, Crestor, Serevent, Diovan, Xanax, and
Vicodin. Dr. Poetz reported that Xanax and Vicodin caused
drowsiness. Dr. Poetz reported plaintiff's prognosis to be good.
Dr. Poetz opined that plaintiff could walk less than one city
block, could sit for more than two hours at one time, could stand
for forty-five minutes at one time, and could sit for a total of
six hours and stand/walk for a total of less than two hours in an
eight-hour workday. Dr. Poetz opined that plaintiff would need to
take unscheduled breaks once or twice a workday in order to sit
quietly for five to ten minutes. Dr. Poetz opined that plaintiff
could frequently lift and carry less than ten pounds and
occasionally lift and carry ten pounds. Dr. Poetz opined that
plaintiff could occasionally twist and rarely stoop, but could
never crouch or climb ladders or stairs. Dr. Poetz opined that
plaintiff should avoid even moderate exposure to extreme cold and
heat and high humidity, and avoid concentrated exposure to wetness.
Dr. Poetz opined that plaintiff would be absent from work about
three days each month on account of her impairment and/or related
treatment. Dr. Poetz noted that plaintiff smoked and was non-
complaint with her treatment. (Tr. 420-24.)

Plaintiff underwent left total knee replacement on
January 19, 2009. (Tr. 412.)

### IV. The ALJ's Decision

The ALJ found that plaintiff met the special earnings

requirements of the Social Security Act through December 31, 2006.
The ALJ found that plaintiff had not engaged in substantial gainful
activity since the alleged onset date of February 11, 2006.  The
ALJ found plaintiff's COPD, left knee pain, and residuals of stroke
with right-sided weakness to constitute severe impairments between
February 11, 2006, and August 20, 2007, but that during that time
plaintiff did not have an impairment or combination of impairments
that met or medically equaled a listed impairment in 20 C.F.R. Part
404, Subpt. P, App. 1.  (Tr. 11-15.)  The ALJ determined that
between February 11, 2006, and August 20, 2007, plaintiff had the
RFC to perform sedentary work except

> claimant must have a sit, stand option with
> the ability to change positions frequently;
> claimant can occasionally climb stairs and
> ramps, stoop, kneel, or crouch; claimant can
> never climb ropes, ladders, or scaffolds or
> crawl; claimant must avoid concentrated
> exposure to extreme cold and heat, wetness, or
> fumes, odors, dust or gasses.

(Tr. 15.)

The ALJ determined that plaintiff was unable to perform her past
relevant work from February 11, 2006, to August 20, 2007.
Considering plaintiff's age, education, work experience, and RFC
during the relevant period, the ALJ determined vocational expert
testimony to support a finding that there was work existing in
significant numbers in the national economy that plaintiff could
have performed, such as information clerk and order clerk.  The ALJ

thus determined plaintiff not to be disabled during the period from February 11, 2006, to August 20, 2007.  (Tr. 15-18.)

## V.  Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that she is disabled.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant

is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record

for evidence supporting the Commissioner's findings." <u>Coleman v. Astrue</u>, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." <u>Id.</u> (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. <u>Coleman</u>, 498 F.3d at 770; <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

A.    Opinion Evidence from Dr. Poetz

Plaintiff claims that, while the ALJ evaluated the opinion evidence offered by Dr. Weis as ordered by the Appeals Council, he erred by failing to analyze the opinion evidence offered by Dr. Poetz. Plaintiff argues that, without consideration of Dr. Poetz's opinion, the ALJ's RFC determination is not supported by some medical evidence and thus is not supported by substantial evidence on the record as a whole.

As an initial matter, the undersigned notes that in his previous decision entered February 17, 2009, the ALJ discussed the medical evidence of record, including the opinion evidence rendered by Dr. Weis and Dr. Poetz in January 2009. (See Tr. 101-02.) Notably, the Appeals Council ordered the ALJ upon remand to further consider only that opinion evidence offered by Dr. Weis. The Appeals Council Order is silent regarding the ALJ's analysis of Dr.

Poetz's opinion.  Nevertheless, for the following reasons, the ALJ did not err in his analysis of Dr. Poetz's opinion upon remand, and plaintiff's claim otherwise fails.

In his written decision entered October 15, 2010, the ALJ thoroughly summarized the medical evidence of record relating to plaintiff's impairments as they existed between February 11, 2006, and August 20, 2007.  With respect to Dr. Weis's January 2009 opinion (which the ALJ was ordered to consider upon remand), the ALJ determined to accord it little weight inasmuch as it addressed plaintiff's limitations as they existed at the time Dr. Weis rendered the opinion, that is, in January 2009.  Inasmuch as the ALJ was limited to considering the effects of plaintiff's impairments as they existed prior to August 20, 2007, the ALJ did not err in according limited weight to the January 2009 opinion of Dr. Weis.  See Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000).  Plaintiff does not challenge the weight accorded Dr. Weis's opinion.

Dr. Poetz's opinion evidence gives rise to the same circumstance.  Dr. Poetz's opinion as to plaintiff's pulmonary functioning was rendered in January 2009 and addressed plaintiff's limitations as they existed at that time, when plaintiff was undisputably disabled.  In contrast, as noted by the ALJ, evidence from the relevant period shows that plaintiff was continuously non-compliant with her treatment regimen as directed by her physician

and that her pulmonary condition would have improved with treatment. Indeed, as noted by the ALJ, the plaintiff disregarded her treatment regimen almost in its entirety during the relevant period.

First, the ALJ noted that despite plaintiff's complaints of stroke-like symptoms in February 2006, plaintiff left the emergency department at St. Mary's Health Center against medical advice. In addition, the ALJ noted Dr. Poetz to have observed in October 2006 that plaintiff failed to check her blood sugar levels as required for her diagnosed condition of diabetes mellitus and that plaintiff stopped taking her medications. The ALJ also noted that plaintiff allowed her medications to run out in February 2007 for three weeks and reported to Dr. Poetz at a subsequent appointment in February 2007 that she was not taking her prescribed medication. Finally, the ALJ noted that plaintiff reported again to Dr. Poetz in May 2007 that she was not taking her prescribed medication, including Advair. Further, plaintiff continued to smoke throughout this period despite repeated instruction to quit. The ALJ aptly summarized:

> The claimant had a real problem with compliance during the period in issue. She left a hospital against medical advice, she had treatment gaps, and she did not take her prescribed medications on numerous occasions. Dr. Poetz repeatedly noted the claimant's non-compliance. He reported it again in January 2009.

. . .

> The claimant has COPD, but does not comply
> with treatment. . . . Further, the claimant
> was a 2 pack per day smoker during the period
> at issue herein despite being told by Dr.
> Poetz to stop smoking.

(Tr. 16.)  (Citation to record omitted.)

An ALJ does not err in giving less than controlling weight to a treating physician's opinion of disability where substantial evidence on the record shows the claimant to have been noncompliant with prescribed treatment without good reason.  Brown v. Barnhart, 390 F.3d 535, 540-51 (8th Cir. 2004).  Plaintiff does not contend that good reason existed for her failure to comply with prescribed treatment, nor does a review of the record reveal any. Instead, plaintiff argues that the ALJ should not have considered plaintiff's noncompliance inasmuch as he failed to examine whether the prescribed treatment would have restored plaintiff's ability to work or would have sufficiently improved her condition, as required by the Regulations.  Plaintiff's argument is misplaced.

Before a claimant is denied benefits because of a failure to follow a prescribed course of treatment, an inquiry must be made on the basis of evidence in the record as to whether such treatment would restore the claimant's ability to work or sufficiently improve her condition.  Burnside v. Apfel, 223 F.3d 840, 843-44 (8th Cir. 2000); 20 C.F.R. §§ 404.1530(a), 416.930(a).  Here, contrary to plaintiff's argument, a review of the ALJ's decision

shows him to have indeed considered whether plaintiff would have experienced sufficient medical improvement had she complied with her prescribed treatment. As noted by the ALJ, diagnostic testing showed plaintiff's pulmonary functioning to have improved by ten to nearly twenty percent with administration of bronchodilators, but that plaintiff did not use or take her medications, including Advair, despite their prescribed use by her doctors. (Tr. 14, 16.) Impairments that are controllable or amenable to treatment do not support a finding of disability. Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

       In addition, the ALJ's finding of nondisability was not made solely because of plaintiff's noncompliance with prescribed treatment. Instead, a review of the ALJ's decision *in toto* shows him to have considered all of the objective medical evidence of record which demonstrated that plaintiff's impairments were not disabling. The ALJ further considered plaintiff's subjective complaints and found them not to be credible to the extent plaintiff claimed her impairments rendered her disabled during the relevant time.[2]  Finally, as noted above, the ALJ considered the demonstrated improvement of plaintiff's pulmonary condition with appropriate treatment. As such, because a review of the ALJ's decision shows him to have considered the entirety of the record in

---

       [2]Plaintiff does not challenge the ALJ's credibility determination.

determining plaintiff's disability, he was not precluded from considering plaintiff's noncompliance with prescribed treatment as a factor in determining the weight accorded to Dr. Poetz's opinion.

Accordingly, because Dr. Poetz's January 2009 opinion did not pertain to plaintiff's condition during the relevant period and was inconsistent with other evidence relating to said period, the ALJ did not err in giving Dr. Poetz's opinion limited weight. See Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000); see also Phillips v. Colvin, 721 F.3d 623, 629 (8th Cir. 2013) (duty of the Commissioner to resolve conflicts in the evidence).

Nevertheless, a review of the ALJ's RFC determination shows it to contain significant functional limitations, including environmental restrictions and a limitation to sedentary work. Such limitations appear to be largely consistent with those described by Dr. Poetz. It cannot be said, therefore, that the ALJ wholly failed to consider the opinion of Dr. Poetz or that the RFC determination is not supported by some medical evidence. See Martise v. Astrue, 641 F.3d 909, 926 (8th Cir. 2011); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." Martise, 641 F.3d at 927 (internal quotation marks and citation omitted). Instead, the ALJ must determine a claimant's RFC based on his review of the record as a whole. The ALJ did so here.

B.    Hypothetical Posed to Vocational Expert

        Plaintiff contends that the ALJ erred by relying on
vocational expert testimony to find plaintiff not disabled inasmuch
as the hypothetical question upon which such testimony was based
failed to include all of plaintiff's limitations.  Specifically,
plaintiff argues that the vocational expert should have considered
those limitations included by Dr. Poetz in his January 2009 report
that plaintiff's pain and symptoms would cause frequent
interruptions of plaintiff's attention and concentration, and that
plaintiff would be absent from work three days each month on
account of her impairments.

        As noted above, the ALJ did not err in failing to accord
controlling weight to Dr. Poetz's January 2009 report.  Nor did the
ALJ err in failing to adopt the entirety of the limitations set out
therein.  As such, it was not error for the ALJ not to include all
of Dr. Poetz's opined limitations in the hypothetical question
posed to the vocational expert.  See Ellis, 392 F.3d at 997;
Pearsall, 274 F.3d at 1220.

## VI.  Conclusion

        For the reasons set out above on the claims raised by
plaintiff on this appeal, the ALJ's determination is supported by
substantial evidence on the record as a whole and plaintiff's
claims of error should be denied.  Inasmuch as there is substantial
evidence to support the Commissioner's decision, this Court may not

reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning v. Sullivan</u>, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, because there is substantial evidence on the record as a whole to support the ALJ's decision, the Commissioner's determination that plaintiff was not under a disability from February 11, 2006, to August 20, 2007, should be affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Acting Commissioner of Social Security Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as defendant in this cause.

**IT IS FURTHER ORDERED** that that the decision of the Commissioner is **AFFIRMED** and plaintiff's Complaint is dismissed with prejudice.

Judgment shall be entered accordingly.


_Frederick R. Buckles_
_____
UNITED STATES MAGISTRATE JUDGE


Dated this  _30th_  day of September, 2013.